JESSE S. CARMAN, STEPHEN L. MERCHANTS, SILAS S. SHAW and CLARKE MERCHANTS, trading under the name and firm of CARMAN, MERCHANTS & SHAW v. WILLIAM A. SCRIBNER.

A common count in *indebitatus assumpsit* in an action under the fifth section of the statute usually called the "mechanic lien law," *Del. Laws*, 12 *vol.* 215, for materials furnished, and received and used by the builder and owner of her, in the construction of a vessel in this State, without any averment in it that they were furnished at the instance and request of such builder and owner, will be defective on special demurrer.

And the book of original entries of the plaintiff will be admissible in evidence in the action to prove the account for the materials furnished, although charged to the vessel and not to the defendant.

But if the vessel at the time was being built by the defendant for other parties under a special contract with them, who have made payments to him in the meanwhile on account of her in pursuance of the contract. and the same is afterward abandoned by the mutual consent of the parties, and the defendant proceeds and finishes her on his own account, he will be deemed in law the whole and sole owner of her from the commencement of the work upon her ; and although payment of the account was first demanded by the plaintiffs of the other parties, and they had commenced a similar suit under the statute against them for it, but which they voluntarily discontinued before instituting the present action against the defendant, the sole question for the jury to decide under the evidence in such case will be, to which of the parties to the contract was the credit given for the materials furnished by the plaintiffs, to the defendant, or to the other parties to it ? If to the former, he would be liable for them ; but if otherwise, he would not be liable for them.

Goods furnished by one person in the line of his business and received and used by another in his line of business, will be *prima facie* evidence of a sale of them by the one to the other, and the law will imply a contract and promise on the part of the latter to pay the former for them whatever they were reasonably worth.

On the appearance of the defendant and entering into recognizance of bail to the writ of attachment in such case, the attachment was dissolved and the vessel was thereby discharged from the lien of it under the statute, and the action thereupon instituted must proceed and be considered and decided according to the principles of law and the rules of evidence which apply in other cases of *indebitatus assumpsit* for work and labor done, materials furnished, or goods sold and delivered. But the general rule of maritime law can have no application in such a case, to bind the vessel itself for the materials furnished, because she was not then in *esse* as a vessel, and because they were furnished in the port or place where she was then being built.

THIS was an action of assumpsit for copper, brass and yellow metal to the value of $833.07, furnished and supplied by the plaintiffs in the building of an hermaphrodite brig, and charged to her in their books, as " The Norton & Stearly Brig," and which was built at Milford by the defendant and owned by him.   The suit was commenced by a writ of attachment sued out under the mechanics' lien law and laid on the vessel soon after she was launched, to which the defendant had given bail, whereupon the attachment was dissolved and the declaration was filed by them in this action against him.

On the case being called, the counsel for the plaintiffs asked leave of the court to amend the declaration by adding the following count: " And also in the further sum of fifteen hundred dollars for certain other goods, wares and merchandise theretofore rendered, furnished and bestowed by the said plaintiffs, and accepted and used by the said defendant, in, upon and toward the construction of a certain vessel, to wit, a certain brig of said defendant, then being built by the said defendant at his shipyard in South Milford in the State aforesaid," for which leave was granted, and the same was filed, and to which the counsel for the defendant demurred specially, because it contained no averment that the said goods were furnished by the said plaintiffs as therein stated, at the special instance and request of the said defendant, and joinder in the demurrer.

*Eli Saulsbury*, for the defendant.   The omission of the averment was fatal, for it was material and absolutely necessary for the plaintiffs to prove, and if so, to allege in the count, not only that the goods were furnished, and received or accepted by the defendant, but also, that they were furnished in the building of the vessel at his instance and request; and without any such allegation, the law would not imply that they were furnished at his instance or request.   It was consequently defective and deficient on special demurrer, at least.   2 *Ch. Pl.* 35. 1 *Saund.* 33 *note* 2.

*Causey,* (*T. F. Bayard with him*) for the plaintiffs. By the mechanic lien law of the State, 12 *vol.* 213, it was, among other things, provided that it shall be lawful for any person or persons having furnished materials to the amount and value therein specified, in the construction of any vessel in this State, upon filing a bill of particulars thereof as prescribed in the statute, and which was done in this case by the plaintiffs, to attach the vessel itself for the same, and upon the dissolution of the attachment on the owner or holder of her giving bail, as was also done in this case by the defendant, the case shall proceed as in other cases of assumpsit for " materials furnished." Such were the identical words, and the only words, employed in the statute in relation to such a case. The words were " materials furnished," not sold and delivered, or furnished at the special instance and request of any one. And as the express object of the law was to give and secure to any and every one who furnished materials for such a purpose, a specific lien on the vessel in the construction of which they were used by the owner of her, for the price and value of them, whether they were furnished at his request or not, the case was evidently intended by the statute to be excepted and exempted from the operation of the general rule and form of pleading on which the special demurrer of the defendant was predicated; and that there was, therefore, no necessity whatever in this case for alleging in the count that the materials in question which were furnished for the vessel and were actually accepted and used by him in the construction of her, were furnished at his instance and request. In the case of an executed consideration like this, Mr. Chitty states the rule of pleading thus—it must be proved that it arose at the defendant's request, though such request may in some cases be implied in evidence, as when the defendant has derived the benefit of the consideration, and has afterward made an express promise to the plaintiff to pay, or has recognized the plaintiff's act. 1 *Ch. Pl.* 296.

*Comegys,* for the defendant. This was not a special

count, on the contrary, it was nothing more than a common count in *indebitatus assumpsit*.   Now, suppose it should turn out that the materials in question were never furnished by the plaintiffs to the defendant, but were in fact furnished, and sold and delivered to another person, and were so charged upon their books, and that person furnished them to the defendant, could it be successfully contended that the defendant was liable in this action to the plaintiffs for the value of them, either under the mechanic lien law, or any other law that could be suggested, merely because he accepted them from that person and used them in the construction of his vessel as alleged in it ?   But the counsel on the other side had not read all of the provision of the statute specially referred to by them, but had overlooked a material portion of it, which essentially qualified the language quoted by them.   For after the words, any person who "shall furnish materials" for a vessel built in this State, follow the words, " in pursuance of any contract, express or implied, with the owner of it."   But if it was not necessary to allege in the count, and to sustain it by proof at the trial, that they were furnished to the defendant at his instance and request, but that it was sufficient to simply allege in it, not that they were sold and delivered to him, which would, of course imply an application on his part to the plaintiffs to purchase them, but merely that they were furnished to him without any allegation of any request from him for them, then one person might recover on such a count from another the value of a pure gift or donation made by the one to the other.   For on the face of the count there was no contract whatever, express or implied, alleged between the parties to the action.

 *The Court* sustained the demurrer, and said that the statute under which the case had arisen, provided that the suit should proceed after the entry of bail and dissolution of the attachment, as in other cases of assumpsit for work and labor, or goods sold and delivered, and this was nothing more than a common count in such an action for ma-

terials furnished by the plaintiffs, as alleged in it, to the defendant and used by him in the construction of a vessel as stated. But it wholly omits to allege that they were furnished at his instance or request, which was essentially contrary to the well established and uniform mode of proceeding and declaring in a common *indebitatus assumpsit* count in such an action, and was, therefore, contrary in that respect, to the provision of the statute itself. Judgment must be entered for the defendant on the demurrer.

The trial then proceeded on the other counts in the narr and the issues of fact joined in the case.

The book of original entries of the plaintiffs, whose place of business was in Philadelphia, was proved and put in evidence, in which the account in question stood charged to the "Norton & Stearly Brig," and not to the defendant.

*Comegys*, for that reason objected to any further examination or statement of the account, as inadmissible evidence in the case, because it appeared from the book itself, that it was not an account against the defendant, and that it could not be contradicted and explained, particularly by the party, the plaintiffs producing it, by evidence to show that it had any relation whatever to the defendant in the action now pending against him upon it.

*The Court*, however, without hearing counsel on the other side, overruled the objection, and the witness proceeded to detail the items in the account.

It was then proved by a member of the firm of Norton & Stearly of the same city, that the latter firm had before the commencement of the account or the building of the brig, contracted with the defendant to build the vessel for them at Milford, and that it was originally intended and agreed between them that she should be fastened with galvanized iron spikes, but they afterward changed their minds and it was agreed between them that she should be copper-fastened, and Mr. Stearly, one of the firm, and Mr. Scribner, the defendant, went together to the establishment

of the plaintiffs to contract for the copper for the purpose, and that the defendant had since admitted to him that he had duly received it at Milford, and used it in the construction of the vessel. By the contract the brig was to be built for their firm, and was to be theirs when finished, but after the work had been commenced on her, and they had paid the defendant $1500 on account during the progress of it, and furnished salt for her to the amount of $130, the firm failed and were unable to make any further payments upon account of it, and by consent of both parties the contract between them was then abandoned, and the defendant went on and finished her for himself, and not for their firm. The plaintiffs, however, had presented a bill to their firm for the copper furnished for her, and left it with them, and had several times since called upon them for the payment of it, but had afterward called for the bill itself and taken it away. The plaintiffs also put in evidence a written admission signed by the defendant and one of the counsel for the plaintiffs, that the copper spikes, rods, rings, &c., named in the bill of particulars filed in the case, were used and put in the said vessel in the construction of her by the defendant, but that they were sent to him by the firm of Norton & Stearly of Philadelphia. That the said vessel was launched on or about the 1st of June 1866 from his yard in South Milford, and that up to that time she had no name.

The defendant's counsel then put in evidence the contract between him and the firm of Norton & Stearly, which was in writing, dated September 12th 1866, and by which the former agreed to build for the latter a vessel to be rigged as a herm brig on the following terms: To be built of white oak throughout, except the deck, and to be fastened outside with galvanized bolts and spikes, length of keel one hundred and sixteen feet straight, breadth of beam thirty feet, depth of hold eleven and a half feet, tons $421\frac{25}{95}$ carpenters' measurement, and otherwise to be finished as should be thereafter decided. The former to furnish all iron work, such as chain-plates, deck-bolts and rudder-

bands, and all other work and materials whatsoever belonging to a vessel's hull, also bowsprit, for $55. per ton legal currency of the United States, and the latter to pay the former as follows : On signing contract $500, on November 1st $1500, on March 1st 1866, $10,000, and the balance when the vessel should be completed, and to be finished in the month of May 1866 ; and the latter to furnish anchor, chain, hawser and tug boat to take her up to Philadelphia when launched. They alsô put in evidence a certified copy of the record of another suit of a similar nature previously commenced under the same statute by the plaintiffs, against the firm of Norton & Stearly, in the Superior Court in and for Sussex County, for the same account and with the like bill of particulars, as filed in the present suit, with the affidavit of the plaintiffs thereunto annexed that the same goods were sold by them to the said Norton & Stearly on the credit of the vessel then building for Norton & Stearly by William A. Scribner at South Milford in the State of Delaware ; but which suit had been voluntarily discontinued by them before this action was instituted.

*Causey*, for the plaintiffs. Notwithstanding the contract for building the vessel was between Norton & Stearly and the defendant, and it was to be their property when it was finished and paid for, yet, as they failed before it was completed, and they abandoned the contract and all claim to the vessel from that time, and the defendant proceeded to finish it as his own property, and used the materials furnished by the plaintiffs in the construction of her, and had derived the whole benefit of them, and had thus acquired the whole and sole property in them, it was but reasonable and just that he should pay the plaintiffs for them. Under the contract with Norton & Stearly he continued to be the sole owner of her, from the time she was commenced in his shipyard at Milford until the abandonment of it by the mutual consent of the parties, and even, if that had not been done, and they had strictly complied with the terms of it by the payment of the $10,000 stipulated to be paid

on the 1st of March 1866, they would have acquired no right of property or ownership in her, until she was completed and delivered to them, under such a contract. *Green v. Hall,* 1 *Houst.* 506. *Hall v. Green,* 1 *Houst.* 546. Proof that goods have been delivered to the defendant and that he has used them, is *prima facie* evidence of a contract and the law will imply a promise to pay for them. 2 *Stark. Ev.* 1202. 1 *Steph. N. P.* 389. 3 *Steph. N. P.* 2535. *Guthrie v. Hyatt,* 1 *Harr.* 446. *Edwards v. Chapman,* 1 *M. & W.* 230. 14 *Johns.* 187. 4 *Hill* 177. *Cowp.* 636. 19 *E. C. L. R.* 320. 23 *E. C. L. R.* 108. It was equally well settled on the authority of the cases cited, that as the owner of the vessel, the defendant was liable in law for such necessary materials actually used in the construction of her, even, if ordered by another, who at the time had authority to order them for her. But independent of any general principle of the common law on the subject, the special provisions of the statute upon which this suit was founded, made the defendant as the owner, and sole owner of the vessel from first to last, liable to the plaintiffs for the materials furnished for her, and which he admits he used in the construction of her, without any regard to the question who ordered them, or to whom they were charged on the books of the plaintiffs, or to whom the credit was given for them at the time when they were furnished for that purpose.

*Eli Saulsbury,* for the defendant. Many of the authorities cited by the counsel for the plaintiffs, could have no just or proper application to the present case, because they had reference only to vessels already afloat, and which carried their credit with them, and that of their owners and their liability for all necessaries furnished them, wherever they sailed. And that arose from the necessities of such property in such a position. But the principle could have no application to a vessel yet upon the stocks, and not yet launched from the builder's shipyard, and in which condition it differed, so far as the law of the case was concerned

from no other building or structure in the process of its construction. This was an action *ex contractu*, and no one could be sued on a contract who was not a party to it, or for goods alleged to have been bargained and sold to him, when it was clearly and conclusively proved that they were not sold to him, but were sold to another person, even though they afterward came into his possession from such other person, and were used by him, or became his property. And there was nothing in the statute referred to, which was intended to subvert or modify that principle of law, as well as justice.

*Comegys*, for the same. When the materials in question were furnished by the plaintiffs, there was in fact no vessel, no husband of it as a vessel, and no one standing in the legal relation of owner to it as a vessel, and it was because the principle of the common law referred to in the cases cited on the other side, did not apply to such a structure during the progress of its construction, and while it was yet a fixture in the defendant's shipyard, the late statute in part was enacted to supply the deficiency in such a case, and to provide the means for rendering it specifically liable in such a condition for materials furnished for the construction of it in pursuance of a contract, express or implied, between the parties to it for that purpose; but not to imply or presume a contract in any such case, with an entirely different person, when an express contract was clearly and indisputably proved with another for that purpose, as had been shown by the evidence and the testimony of one of the plaintiffs in the present case. Neither the words, nor the evident meaning of the statute, could warrant such a construction as was contended for on the other side.

*T. F. Bayard*, for the plaintiffs. The manifest object of the statute was to give, and in express term does give, a specific lien upon a vessel built in this State, to any one furnishing materials for it during the construction of it, for such materials from the time they are furnished for

that purpose, upon his suing out an attachment and laying it upon the vessel as prescribed in the act, and when that was done and the attachment was dissolved as provided for in it, and the vessel is released or discharged from that specific lien by the owner's giving bail and entering into recognizance with security for the claim, the recognizance becomes the substitute and security in lieu of the lien for the payment of the amount due for them, by the owner or claimant of her, whoever he may be, who enters into such recognizance.   In this case the defendant was the sole owner of the vessel then commenced and being built, when the materials were furnished by the plaintiffs for it, when they were used by him in the construction of it, when it was built and launched, when the attachment was laid upon it and he appeared and entered into recognizance of bail and by the dissolution of it, obtained the absolute discharge of the lien upon it.   Much had been said about there being no contract between the plaintiffs and the defendant for the furnishing of the materials, although he received them and used them in construction of the vessel, and what was more, was present, and was then the sole owner of her, when they were contracted for and ordered of the plaintiffs; and if it was true, that they were charged to the firm of Norton & Stearly, who never were owners, or part owners of her, and there was no contract, express or implied, between him and the plaintiffs for the furnishing of them, did he not assume by afterward avowing himself the sole owner of her, and entering into the recognizance of bail and admitting that he received and used the materials in the construction of her, even as strong an obligation to pay for them as if he had previously and expressly contracted for them within the true meaning and purview of the statute in question ?   The words of the statute were not that any person who should furnish materials for such a purpose in pursuance of any contract express or implied, with any other person, should have a right to sue that particular person therefor as in like cases of assumpsit, for it required no statute to enable any one to do that in such a case; for the words were far more

general and comprehensive in their import and proper construction, and were as follows: " Section 5. This act shall also extend to work and labor or materials performed or furnished in the construction, alteration, furnishing, rigging, launching or repairs of any ship or vessel within this State," provided the bill of particulars in any such case shall be filed within the brief and limited time prescribed in such case for that purpose; and upon the filing of which, it provides that the attachment may at once issue commanding the sheriff of the county to attach the defendant in the writ by such ship or vessel, so that he be and appear at the next term of the court for the county to answer the plaintiff's demands, and, of. course, also to seize and hold such ship or vessel as security and as a specific pledge for the payment of the same, until dissolved by recognizance of bail, or until otherwise disposed of in due course of law. Now, there were no words in this particular provision of the statute, which say or mean that it shall extend in such a case to work and labor or materials performed or furnished in the construction &c. of any ship or vessel within this State, "in pursuance of any contract, express or implied, with the owner of it," as we find in the first section in reference to other kinds of buildings or structures, but the words in pursuance of any contract, express or implied, with the owner of it, as we find in the first section in reference to other kinds of buildings or structures, are wholly omitted and left out of it. And why this entire omission of such words, and this remarkable distinction in this respect between a ship or vessel, and other kind of building or structure provided for in the preceding provisions of the act, if it was not the obvious intention of the Legislature in establishing such a striking difference and distinction between them, to make any owner of such ship or vessel, whether known or not, to the party furnishing such materials, or whether charged with them or not, upon the books of the latter, legally and absolutely liable for them to any person so furnishing them, in analogy to the well-known principle of the com-

mon law which applies in the case of necessaries furnished to a ship or vessel when finished and afloat, wherever they may be supplied to her? There could be no doubt that such was the meaning and intention of the act, and of the marked distinction made in it with reference to this particular kind of building or structure in the progress of its construction. But after all that had been said upon the other side on the alleged ground that the credit for the materials furnished, was given by the plaintiffs to the firm of Norton & Stearly, it was not so; for the books showed they were charged to the vessel itself, in the only name by which it was then known, and that was as the "Norton & Stearly Brig." And such a charge is always a charge against the owner or owners of the vessel, whoever and wheresoever he or they may be, and whether known or unknown to the party furnishing the supplies, and so charging them against the ship or vessel for which they have been furnished. 4 *Hill* 177. 19 *E. C. L. R.* 320.

*The Court, Gilpin, C. J., charged the jury*, that the general rule of maritime law adverted to in the argument by the counsel on both sides, could have no application to the case, because there was no vessel in existence when the materials were furnished and were used in the construction of the brig in question; and furthermore, because they were furnished in the port or place where she was being built, and which she had never left up to the time when the attachment was laid upon her and was dissolved, and where she had continued until after that time within the limits of the State. But the attachment which had been laid upon her under the mechanic lien law, or statute of the State at the suit of the plaintiffs, having been dissolved by the appearance and recognizance of bail of the defendant, and the vessel having been thereby discharged from the lien of the attachment, and this action having thus been instituted here pursuant to the provisions of it, the case was now before this court as any other action of assumpsit instituted in the usual method, and must be con-

sidered and decided according to the principles of law and the rules of evidence which apply in other cases of *indebitatus assumpsit* for work and labor, or materials furnished, or goods sold and delivered; for so the statute itself says the action shall proceed in such a case as this arising under it. And in such an action it is a general and well-settled principle of the common law that if a person is engaged in selling and furnishing goods generally, or any particular kind or kinds of goods or materials as a business, and in the usual course of such business delivers such goods or materials to another, and he receives and uses them in his line of business, it will be *prima facie* evidence of a sale of them by the former to the latter, and the law will imply a contract and promise on the part of the latter to pay for them whatever they were reasonably worth at the time he so received and used them. According to the evidence which was not disputed, the defendant in this case was from the first to the last, the sole owner of the brig or vessel in question, and went with Stearly, one of the firm of Norton & Stearly, to the place of business of the plaintiffs in the city of Philadelphia, and was present when the materials were ordered of them, while the articles stand charged on their books neither to the firm of Norton & Stearly, nor the defendant expressly or directly, but to the vessel itself under the name or designation of "The Norton & Stearly Brig," for which they were furnished, and which was then being built by the defendant in his shipyard at Milford in this State, for the firm of Norton & Stearly in that city, under the written contract which had before been entered into between them for that purpose, and which had been proved in the case, but which was afterward wholly abandoned by the mutual consent of the parties to it, when the defendant proceeded with his work upon her and completed and launched her as his own property. Under this state of facts and the written contract between them, she was in contemplation of law, at no time, the property in whole or in part, of any other person or persons than the defendant, notwithstanding that

firm had made him some payments in the meantime upon her under the contract. And upon these facts the sole question to be decided by the jury was, to whom was the credit given for the materials by the plaintiffs when they were furnished for the vessel? Was it to the firm of Norton & Stearly, or to the defendant? If to the firm of Norton & Stearly, then they would not be entitled to recover the value of them from the defendant, and their verdict should be in his favor; but if to the defendant, then their verdict should be for the plaintiffs in such amount as they had been proved to be worth with interest upon it from the time they were furnished. It would, therefore, be for the jury to consider and determine from all the facts and evidence in the case, to which of them the credit was given as before stated, and to decide it accordingly.

The plaintiffs had a verdict.